WHITT v. COOK, DIRECTOR, ET AL.

(No. 238847—Decided February 13, 1970.)

Common Pleas Court of Franklin County.

*Mr. Christopher Carroll*, for plaintiff.
*Mr. Paul W. Brown*, attorney general, and *Mr. John H. Connor*, for defendants.
*Mr. Charles T. Kaps*, for intervening defendants.

WHITESIDE, J. This is an action to enjoin the Director of the Department of Liquor Control from issuing any liquor permits for the sale of spirituous liquor by the glass in Precincts B and D of the city of Centerville, Ohio.

Intervening defendants, Maureen Harbison and Anthony J. DiPasquale were granted leave to intervene as parties because of their interest in the outcome since they have pending applications for D-3 permits with the Department of Liquor Control for location within the aforesaid precincts.

It appears that in the November 1933 election a majority of the electors of the Village of Centerville voted against the repeal of Section 9, Article XV, Ohio Constitution.

Petitions were filed with the Board of Elections of Montgomery County seeking an election pursuant to Section 4303.29, Revised Code, upon the question of allowing spirituous liquor to be sold by the glass in Precincts B and D of the now City of Centerville. Such election was held in November 1969, and resulted in a majority vote in favor of the sale of spirituous liquor by the glass in said precincts. No one challenged the holding of such election and no election contest was filed. Plaintiff, an elector of Precinct D of the City of Centerville, brings this action to enjoin the issuance of any liquor permits for the sale of spirituous liquor.

The defendants contend that the plaintiff has no standing to sue, that he has or had adequate remedies at law, and that an election in two precincts is authorized by law.

Section 4303.29, Revised Code, provides in part:

"* * * No D-3, D-4, or D-5 permit shall be issued in any municipal corporation, or in any township, exclusive of any municipal corporation or part thereof, in which at the November 1933 election a majority of the electors voting thereon voted against the repeal of Section 9 of Article XV, Ohio Constitution, unless the sale of spirituous liquor by the glass is authorized by a majority vote of the electors voting on the question in such municipal corporation or township or part thereof, *in this section designated as the liquor control district, at an election held pursuant to this section or by a majority of the electors of the liquor control district voting on question (D) at a special local option election held in such district pursuant to Section 4301.35 of the Revised Code.* * * *." (Emphasis supplied.)

The next paragraph of the section provides for an election upon petition of fifteen per cent of the voters voting for governor at the last election "upon the question of allowing spirituous liquor to be sold by the glass." This was the procedure followed in the instant case.

Thus, Section 4303.29, Revised Code, provides two methods by which the sale of spirituous liquor by the glass may be permitted. The first is by an election upon that question in the liquor control district established by this section. The second is by a special local option election held pursuant to Section 4301.35, Revised Code. Section 4301.35, Revised Code, specifically permits a local option election to be held in a "residence district in a municipal corporation consisting of two or more contiguous precincts." Section 4301.32, Revised Code.

The language that "no permit shall be issued in any municipal corporation, or in any township, exclusive of any municipal corporation or part thereof," as contained in Section 4303.29, Revised Code, is a recognition of the fact that a township may include part but not all of a municipal corporation. Thus, the words "or part thereof" modify only the second use of the words, "municipal cor-

poration" preceded by the words "exclusive of any." Thus, the words "or part thereof" do not change the nature of the liquor control district established by Section 4303.29, Revised Code. There are only two types of liquor control districts established by that section: (1) municipal corporations and (2) townships, exclusive of any municipal corporation or part thereof. See *State, ex rel. Olympia Athletic Club,* v. *Department of Liquor Control,* 129 Ohio St. 140.

In other words, Section 4303.29, Revised Code, did not permit a part of a municipal corporation to become a liquor control district even though such part may have voted either for or against the repeal of Section 9, Article XV, Ohio Constitution, at the November 1933 election.

Section 4303.29, Revised Code, permits an election under that section to be held only in the liquor control district established by that section. In this case, the liquor control district was the entire city of Centerville as it existed in November 1933. Had the Legislature intended the liquor control districts to be the same as those established by Section 4301.32, Revised Code, it would have said so rather than carefully stating "in this section designated as the liquor control district."

It is true that a special local option election might have been conducted in the two precincts in question pursuant to Section 4301.35, Revised Code. (The court assumes that an election conducted under that section in two precincts would meet the requirements of Section 4303.29, Revised Code, although it might be debatable.) However, under such an election five questions would have been submitted to the electors rather than the single question of whether the sale of spirituous liquor by the glass should be authorized.

The court, therefore, concludes that the election held in Precincts B and D of the City of Centerville in November 1968, did not meet the requirements of Section 4303.29, Revised Code, to permit the issuance of D-3, D-4, or D-5 permits in those precincts or any other part of the City of Centerville as it existed in November 1933.

It is true that the results of an election can be chal-

lenged only by an election contest. Section 3515.08, Revised Code; 19 Ohio Jurisprudence 2d, Elections, Section 147, p. 155. However, in this case it is not the *results* of the election that is the subject of inquiry but rather the *effect* of such election. It has been held that the holding of an election, even though not followed by an election contest, cannot have the effect of creating an office that does not legally exist nor of conferring title to an office upon one not qualified for the office. *State, ex rel.,* v. *O'Brien,* 47 Ohio St. 464; *State, ex rel. Cox,* v. *Riffle,* 132 Ohio St. 546; *State, ex rel. Kirk,* v. *Wheatley,* 133 Ohio St. 164. See, also, *State, ex rel. Barklow,* v. *Appel,* 165 Ohio St. 498, wherein the issue was raised by an action in mandamus prior to the election. See, also, *State, ex rel. Greenlund,* v. *Fulton,* 99 Ohio St. 168, wherein the Supreme Court denied writ of mandamus sought to compel the Secretary of State to publish an amendment to the constitution approved by a majority of the electors but which had not been properly submitted.

In any event, the court concludes that the election held in Precincts B and D of the City of Centerville in November 1968, cannot have the effect of amending Section 4303.29, Revised Code, to provide additional authority to issue D-3, D-4, or D-5 permits in liquor control districts which voted against repeal of Section 9, Article XV, Ohio Constitution, in the November 1933 election. In other words, Section 4303.29, Revised Code, can be amended only by an act of the General Assembly and cannot be amended by voters in only two precincts regardless of whether or not any election contest is filed. This necessarily follows because election contests are a political rather than a judicial matter. *Williams* v. *O'Neill,* 142 Ohio St. 467. On the other hand, the meaning, application and effect of Section 4303.29, Revised Code, and the powers and duties of the Department of Liquor Control thereunder in light of the election that was held in November 1968, in Precincts B and D of the City of Centerville are judicial matters.

Likewise, the failure of plaintiff to utilize the protest provided by Section 4301.33, Revised Code, does not pre-

clude the instant action both because of the reasons set forth above and because such action applies only to local option elections and not to the special election provided by Section 4303.29, Revised Code. No contention has been made that the instant election was a local option election pursuant to Section 4301.32 *et seq.*, Revised Code, but rather it has been established that the election was attempted and conducted pursuant to Section 4303.29, Revised Code.

The failure of plaintiff to raise this issue before the election, although it might constitute laches in a proper case, does not preclude the instant action since there is no showing that any prejudice has resulted to defendants because of such delay. At most, intervening defendants will fail to gain a privilege they hoped to gain.

Defendants also contend that Section 4303.261, Revised Code, precludes this action. However, that section confers the right to object only upon the legislative authority of the municipal corporation and then only upon the question of reputability of the applicant and suitability of the location.

It might also be noted that the local option election statute, unlike Section 4303.29, Revised Code, does not preclude the issuance of permits but only the use of such permits by the permit holder. See Sections 4301.36, 4301.-39 and 4301.391, Revised Code.

This leaves remaining the question of the standing of the plaintiff to bring this action.

The plaintiff has merely shown that he is an elector and resident of one of the two precincts involved. While the two permits for which applications have been filed are some distance from the residence of plaintiff, the requested relief is not limited to or conditioned upon permits at those two locations but rather relates to the entire area of the city of Centerville as it existed in November 1933, including the two precincts in question.

The attorney for the intervening defendants argued that plaintiff would have the right to bring an action for declaratory judgment and that this constitutes an adequate remedy at law.

It has been stated broadly that "as a matter of public policy a citizen does have such an interest in his government as to give him capacity to maintain a proper action to enforce the performance of a public duty affecting himself and citizens generally." *State, ex rel. Newell,* v. *Brown,* 162 Ohio St. 147. See, also, *State* v. *Brown,* 38 Ohio St. 344; *State, ex rel.,* v. *Tanzey,* 49 Ohio St. 656; *State, ex rel. Tauger,* v. *Nash,* 66 Ohio St. 612; *Brissel* v. *State, ex rel. McCammon,* 87 Ohio St. 154. Compare: *State, ex rel. Masterson,* v. *Ohio State Racing Commission,* 162 Ohio St. 366; *State, ex rel. Masterson,* v. *Ohio State Racing Commission,* 164 Ohio St. 312; *State ex rel. Skilton,* v. *Miller,* 164 Ohio St. 163.

The *Newell case, supra,* was followed although it was suggested that the language was too broad in *State, ex rel. Wesselman,* v. *Board of Education,* 170 Ohio St. 30, which was overruled in part on other grounds in 7 Ohio St. 2d 85.

In the case of *State, ex rel.,* v. *Henderson,* 38 Ohio St. 644, we find the following statement at pages 648 and 649:

"* * * As regards the degree of interest on the part of the relator, requisite to make him a proper party on whose information the proceedings may be initiated, a distinction is taken between cases where the extraordinary aid of a mandamus is invoked, merely for the purpose of enforcing or protecting a private right, unconnected with the public interest, and those cases where the purpose of the application is the enforcement of a purely public right, where the people at large are the real party in interest, and, while the authorities are somewhat conflicting, yet the decided weight of authority supports the proposition that, where the relief is sought merely for the protection of private rights, the relator must show some personal or special interest in the subject matter, since he is regarded as the real party in interest and his rights must clearly appear. *On the other hand, where the question is one of public right and the object of the mandamus is to procure the enforcement of a public duty the people are regarded as the real party, and the relator need not show that he has any legal or special interest in the result, it being sufficient to show that he is a citizen and, as such, interested in the execution of the laws.* * * *"* (Emphasis supplied.)

While this is an injunction action, it is the enforcement of a public duty that is sought, albeit a negative one, refraining from issuing D-3, D-4, or D-5 permits in areas wherein the issuance of such permits are prohibited by law.

Plaintiff has shown that he is a citizen by showing that he is a resident and elector (although he has not directly shown he is a taxpayer) and as such is directly interested in the enforcement of the law involved.

While the various pronouncements of the Supreme Court are not entirely clear, the court feels that plaintiff as a citizen has sufficient interest to maintain the present action especially in view of the fact he is a member of a class expressly recognized by statute as having a special interest in whether the sale of intoxicating liquor by the glass should be permitted.

The remedy of declaratory judgment is not an adequate remedy at law precluding an action for injunction, where, as here, it would be effective only if coupled with injunctive relief. Furthermore, if plaintiff would have standing to bring an action for declaratory judgment as argued by defendant, he would necessarily have standing to bring an action for injunction.

The court, therefore, concludes that plaintiff has standing to bring this action and has demonstrated sufficient irreparable injury as a citizen, resident or elector, to be entitled to injunctive relief and has no adequate remedy at law.

The defendants, Department of Liquor Control and the Director thereof, will be enjoined from issuing any D-3, D-4, or D-5 permits in the City of Centerville as it existed in November 1933, unless and until authorized by an election pursuant to Section 4303.29, Revised Code, upon the single question of whether sale of spirituous liquor by the glass should be permitted within the entire city as it then existed, or unless and until authorized by a local option election conducted pursuant to Section 4301.32, Revised Code, either within the entire city or in any residence district thereof, composed of two or more contiguous precincts. Exceptions to defendants.